UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re Enrique Jaime, | ) | Bankruptcy No. 14-B-83456 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | Judge Lynch |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Chapter 7 Trustee's motion pursuant to Fed. R. Bankr. P. 9019 to settle the adversary proceeding which he brought against the Debtor, several family members of the Debtor and several entities in which the Debtor has an interest. For the reasons discussed below, the motion to approve compromise is GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code on November 14, 2014. Although Mr. Jaime listed his address in the petition as 11933 County Line Road, Garden Prairie, Illinois (the "Garden Prairie Property"), he did not disclose any real estate holdings in his bankruptcy schedules filed twelve days later. In his Schedule B, the Debtor claimed an interest in "Laredo Systems (landscape business)" and "Laredo Systems, LLC," though he scheduled the value of each to be "$0.00." In his Schedule of Financial Affairs, he stated that he transferred his "business of Loredo Systems" to his brother in 2013 and elsewhere in the schedule

stated that he had an interest in the landscape businesses "Loredo Systems & Loredo Systems, LLC" located at the Garden Prairie Property from "7/8/09 – 12/12/13 – to brother."

The initial Chapter 7 Trustee in the case, Megan Heeg, filed an initial report of assets on March 2, 2015 following the meeting of creditors held on December 18, 2014. The meeting of creditors was continued several times. After extensive, prolonged and highly contentious discovery by the Trustee,[1] Ms. Heeg filed a nine-count adversary complaint, case number 16-A-96023, on April 22, 2016 against (1) the Debtor, (2) his ex-wife Teresa Jaime, (3) his mother Rosaura Jaime, brother Gerardo Jaime and sisters Elsa Baeza and Beatrice Galvan (collectively, the "Family Members"), and (4) Laredo Systems, Inc., Laredo Systems, LLC, Laredo Leasing, LLC, Laredo Systems Group, Inc., Laredo Leasing Group, Inc. (collectively, the "Corporate Defendants"). Gerardo Jaime is apparently a resident of Kentucky. The other defendants are residents of or incorporated in Illinois. In this proceeding Trustee Heeg sought to recover a number of vehicles, trailers and equipment used in the Debtor's landscaping business which the Trustee alleged were either owned by the Debtor, owned by companies which should be treated as the Debtor's alter ego, or

---

[1] In particular, Trustee Heeg sought and obtained leave to conduct a Rule 2004 examination of the Debtor's ex-wife, Teresa Jaime. After Teresa refused to complete the 2004 examination and failed to produce all requested documents, Trustee Heeg brought a motion to compel compliance. The court granted that motion on July 8, 2015. When Teresa further failed to comply, the court issued a rule to show cause against her on August 12, 2015. Trustee Heeg was forced to appear at no fewer than 14 court appearances between June 22, 2015 and August 2016 – many of the hearings extended – in her attempt to obtain compliance. On March 27, 2017, the court approved $18,000 in fees incurred by Trustee Heeg between May 2015 and September 2016, which according to Trustee Heeg's fee application was a discount from the $35,500 incurred and of which an estimated $7,050 were found to be caused by Teresa's failure to timely comply with discovery requests.

were fraudulently transferred to Teresa, the Family Members or the Corporate Defendants. Trustee Heeg also sought to avoid as a fraudulent transfer the conveyance of the Garden Prairie Property from the Debtor to Teresa by a warranty deed recorded on December 9, 2010, and to avoid as either a preferential or post-petition transfer $36,064 in transfers from a checking account in the name of Laredo Systems to Teresa allegedly made between January 15, 2014 and December 29, 2014.

Teresa Jaime and the Defendant Family Members separately answered the Adversary Complaint on June 29, 2016. The Debtor filed his answer on June 30, 2016. The Corporate Defendants never answered the complaint and default judgment issued against them in favor of the Trustee on January 30, 2017. The Default Judgment ordered each of the Corporate Defendants to turn over specified vehicles, trailers and equipment in their possession as property of the estate.

On September 23, 2016, Trustee Heeg resigned from the case and the United States Trustee appointed Ira Bodenstein to succeed her. Trustee Bodenstein continued to pursue discovery in the matter, including visiting the Garden Prairie Property and physically inspecting the vehicles, trailers and equipment disclosed by the Defendants, all the while the matter remained contentious, to say the least.

At all times the respective individual defendants have vigorously disputed the allegations asserted by the Trustee. In particular, Teresa has disputed the allegation that she did not provide fair value in exchange for the Garden Prairie Property.

On May 8, 2017, Trustee Bodenstein moved the court to approve the compromise he had reached with the Defendants. Under the terms of the proposed

compromise, the Trustee agreed to waive his claims based on or arising from, or relating to the Adversary Complaint in exchange for Defendant's cash payment of $65,000. Trustee Bodenstein would also release the *lis pendens* recorded by his predecessor against the Garden Prairie Property. The proposed compromise is expressly limited to the Garden Prairie Property and the vehicles, trailers and equipment listed on a schedule attached to the Settlement Agreement that was initially developed during the discovery taken by the Trustee. The parties' written settlement agreement, as amended, expressly states that it shall have no effect on or preclusive effect on the objection to discharge brought by the U.S. Trustee against the Debtor as Adversary Proceeding No. 16-96048, the objection to discharge brought by creditors Jose Guzman, Jaime Mercado, Bernardo Mercado, Crisanto Pichardo and Celestimo Mercado (the "Mercado Plaintiffs") as Adversary Proceeding No. 16-96022, or the action brought by the Mercado Plaintiffs against Laredo Systems, Inc. and other defendants in the Northern District of Illinois as Case No. 10-CV-01499.

Neither the U.S. Trustee nor any creditor other than the Mercado Plaintiffs has objected to the settlement. The Mercado Plaintiffs, who filed 15 of the 21 proofs of claim currently on file, assert claims based on a pre-petition judgment or judgments entered in the district court case under the Fair Labor Standards Act and the Illinois Minimum Wage Law for the period from 2005 through 2010.[2] The Mercado Plaintiffs

---

[2] The proofs of claim give few details as to the nature of the claims other than referencing one or more judgment orders. According to allegations made in the Adversary Complaint, summary judgment was entered by the District Court as to liability in October 2012, with the matter continued for trial on damages, and a judgment of more than $175,000 entered against the District Court defendants in February 2013 as an interim award of attorneys' fees and costs. During argument on this motion, counsel suggested to this court that the parties await the district court's final determination of the Mercado plaintiffs' damages.

initially disputed several of the recitals in the proposed settlement agreement and raised concerns about the potential preclusive effect of this court approving the settlement. In particular, the Mercado Plaintiffs took issue with references in the stipulations to Laredo Systems being a "family business." After concerns were raised during the hearing on this motion about the potential preclusive effect that the compromise may have as to pending separate actions brought by third parties, the Trustee and the Defendants executed and filed with the court an Amendment to Settlement Agreement that stipulated that their agreement shall have no such effect.

The Mercado Plaintiffs filed a written objection to the motion to compromise on June 8, 2017. The Mercado Plaintiffs first contend that this court should deny the Trustee's Rule 9019 motion and refuse to authorize the proposed Settlement Agreement as it is, in their words, "based upon statements which are contradicted by sworn statements of the Debtor." (Obj., ECF No. 203, par. 2.) They point in particular to various recitals contained in the agreement, noting that by its terms "the recitals are incorporated in full, and made a part of" the agreement. In addition, they point to an affidavit made by the Debtor's dated December 16, 2017, which purports to support the Schedule of Items prepared for the Trustee by order of this court. First, the creditors argue, the recitals and the Debtor's affidavit falsely state that Laredo Systems is a "family business," pointing to several certifications provided by the Debtor to the State of Illinois from 2009 to 2016, statements given by Mr. Jaime's attorney in response to questioning by the district court about the Laredo business and a 2013 letter of the Debtor that "made statements that Laredo Systems was 100%

owned by the Debtor." (Id., par. 8.) Still referencing the Debtor's December affidavit, the creditors further assert both that the attached "Schedule of Items" which the affidavit testifies about is incomplete and misleading. For example, according to the objecting creditors, the affidavit and schedule fail to disclose receipts and contracts of Laredo Systems admitted in the Debtor's statements in the district court proceedings and the affidavit falsely alludes that Mr. Jaime is not the sole owner of Laredo.

The objection continues by asserting that the Debtor failed to schedule receipts of Laredo Systems in his bankruptcy schedules, and otherwise utilized post-petition that company's funds as his own. Finally, the creditors object to the 25th recital found in the Settlement Agreement as "proposing to transfer any of the estate's rights in [the Garden Prairie Property] to Teresa Jaime" when in fact a deed to the property was recorded in her name in 2010. (Id., par 19.)

## DISCUSSION

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The court "may approve a settlement agreement only if it is in the best interest of the bankruptcy estate." *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 801 (7th Cir. 2012). The "giving of a release in exchange for some action by the debtor ... as part of a generally beneficial compromise settlement, may be the most efficient and fair means of administering the estate." *Hoseman v. Weinschneider*, 322 F.3d 468, 475 (7th Cir.

2003) (finding that where court approved a release pursuant to Fed. R. Bankr. P. 9019 "compliance with formal abandonment procedures is not necessary"). And in negotiating the terms of release, bankruptcy trustees, "who have a fiduciary obligation to the claimants against the bankruptcy estate, are generally given broad discretion to determine the best way to pursue the administration of the bankruptcy estate, and equally broad discretion to decide whether a compromise settlement – which may include a release of future claims or a covenant not to sue – is preferable to protracted litigation." *Id.*

On the other hand, for the settlement to be effective, the bankruptcy court must approve it on motion by the trustee and after notice and a hearing. Fed. R. Bankr. P. 9019(a). The court must apprise itself of "all facts necessary to evaluate the settlement and make an 'informed and independent judgment' about the settlement." *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 587-88 (7th Cir. 1994) (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)) (but holding that an evidentiary hearing was not required). The court may not "simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber-stamp' the trustee's proposal." *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987) (reversing approval because bankruptcy judge made inadequate findings to support the settlement).

In making the determination as to whether a proposed settlement is in the best interests of the estate, "the court must weigh the costs and benefits of litigation

versus settlement." *Holly Marine Towing, Inc.*, 669 F.3d at 801. Factors to consider include "the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Depoister*, 36 F.3d at 586 (quoting *TMT Trailer*, 390 U.S. at 424-25). The costs of litigation can be expensive, and must be considered in evaluating the risk-adjusted value of the claim. *In re Fort Wayne Telsat, Inc.*, 665 F.3d 816, 823 (7th Cir. 2011). A proposed settlement will pass the "best interests test" if it "falls into 'the reasonable range of possible litigation outcomes.'" 669 F.3d at 801 (quoting *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007)).

At the June 14, 2017 hearing on the Rule 9019 Motion, the Chapter 7 Trustee stated to the court his belief that it would cost an additional $75,000 to litigate the Adversary Complaint and, if successful, sell the assets. Mr. Bodenstein further represented that the estate is already administratively insolvent and that he believed continuing to litigate the matter would only make the estate further administratively insolvent, even if successful. The Mercado Plaintiffs did not dispute the Trustee's assessment of the potential costs of litigation, nor did they suggest a way to fund such litigation (nor offer to contribute towards such costs themselves).

Additionally, the Chapter 7 Trustee described his discovery efforts, including a physical inspection of the assets at issue in the settlement. Despite suggestions of higher value in prior statements by the Debtor and the former trustee, Trustee Bodenstein reported that after physically inspecting the equipment and vehicles he

Page **8** of **10**

observed most to be old and to have been exposed to the elements. As for the Garden Prairie Property, while still asserting his belief that it was fraudulently transferred to Teresa Jaime, Trustee Bodenstein noted that there is evidence that Teresa paid $95,671.69 in September of 2010 to redeem a mortgage on the property – potentially supporting a defense to the avoidance action. While there may still be disputes over the original source of funds used to make the payment, issues regarding the payment may increase the cost of litigation and decrease the likelihood of success.

Additionally, the Chapter 7 Trustee represented that he was aware of the alleged prior 'admissions' or prior inconsistent statements by the Debtor raised by the Mercado Plaintiffs and that they did not alter his assessment of the value, costs or risks of litigation of pursuing the Adversary Complaint to completion. Most relate to statements by the Debtor as to his complete ownership of various Laredo Systems entities or circumstances in which he held himself out as the sole owner of the entities or used their property as his own. Yet, the basis of several counts of the Complaint are that the entities should be treated as the Debtor's *alter ego*. The settlement is not an admission or determination of the facts raised in the Complaint or the defenses raised by the Defendants. Indeed, the settlement agreement expressly states that the settlement "is a compromise of disputed claims and that neither admits, and each expressly denies, any liability on their part."

The Mercado Plaintiffs also suggest that the Debtor may have had other assets or received income not listed in the schedule of assets referenced and incorporated into the settlement agreement. But even if that were to be the case, it would not alter

the determination of the value of settlement. The settlement agreement expressly states that the "Trustee releases, acquits and discharges *only those claims based upon, arising from, or relating to the assets listed in the Schedule and the Garden Prairie Property.*" (ECF No. 194-1 (emphasis added)). If the Debtor has other undisclosed assets, the settlement agreement will not preclude the Trustee from pursuing them.

Accordingly, the court finds that the Trustee has met his burden of demonstrating that the proposed settlement of the Adversary Complaint returns a value which, based on the reasonable range of possible litigation outcomes and costs associated therewith, is commensurate with the risk-adjusted value of the claims asserted in the Complaint. The motion to approve compromise, therefore, will be granted.

A separate order shall be entered giving effect to the determinations reached herein.

DATE: June 19, 2017

ENTER: *[signature]*

Thomas M. Lynch
United States Bankruptcy Judge